[Cite as *State v. Williams*, 2012-Ohio-107.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

STATE OF OHIO
              Plaintiff-Appellee

v.

SHAWN W. WILLIAMS
              Defendant-Appellant

:
:
:
:
:
:
:
:
:
:
:
:

Appellate Case No. 24452

Trial Court Case No. 09-CR-1093

(Criminal Appeal from
 Common Pleas Court)

. . . . . . . . . . .

O P I N I O N

Rendered on the 13th day of January, 2012.

. . . . . . . . .

MATHIAS H. HECK, JR., by JOHNNA M. SHIA, Atty. Reg. #0067685, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
        Attorneys for Plaintiff-Appellee

WILLIAM O. CASS, JR., Atty. Reg. #0034517, 3946 Kettering Boulevard, Suite 202, Kettering, Ohio 45439
        Attorney for Defendant-Appellant

. . . . . . . . .

HALL, J.

{¶ 1} Ohio's sex offender registration and notification law (SORN) requires a subject offender to notify the sheriff of any change in his residence address at least 20 days before the change occurs. R.C. 2950.05(A). Importantly, a "'change in address' includes any circumstance in which the old address for the person in question no longer is accurate, regardless of whether the person in question has a

new address." R.C. 2950.05(I). It is an affirmative defense to a charge of violating the notification requirement if timely notice was impossible to give because, on the date by which notice should have been given under the statute, the offender did not know that his residence address was going to change. R.C. 2950.05(G)(1). But the offender must notify the sheriff of the change on the first business day after the offender learned of it. Id.

{¶ 2} Defendant-Appellant Shawn Williams's 2006 rape conviction subjects him to SORN's notification requirement. In April 2009, shortly after his release from prison, Williams was charged with violating this requirement. He pleaded no contest and was convicted. Williams appealed. Holding that Williams did not knowingly and intelligently enter his plea, this Court vacated it, reversed his conviction, and remanded the case. See *State v. Williams*, 189 Ohio App.3d 111, 2010-Ohio-3334.

{¶ 3} On remand, the failure-to-notify charge was tried to the court. The trial court orally found the following facts. On March 9, 2009, Williams registered a home on Edgar Avenue as his residence. Sometime before March 13, Williams's parole officer, Crystal Langer,[1] told him that he had to find somewhere else to live because children lived in that home. On March 17, Williams told Langer that he knew he could not stay at the Edgar Avenue home for this reason so, for the past two weeks, he had been staying at a home on Kirkham Street. On March 30, a detective visited the Edgar Avenue home. The owner told the detective that Williams was not living there, that he had no personal belongings there, and that, since his release from prison,

---

[1] No relation, the trial judge noted for the record.

Williams had spent only three nights there. On April 2, Williams told Langer that he had not registered the Kirkham Street address; Langer told him that he must do so. On April 3, Williams told the detective that he did not live at the Edgar Avenue home, whose address was still registered as his residence. Williams said that he was living in a home on Kipling Avenue. He told the detective that he had not registered its address because Langer disapproved of the Kirkham Street address and he did not want to get in trouble.

{¶ 4} Based on these facts, the trial court found that March 17 was the latest that Williams knew that the Edgar Avenue address was no longer accurate. Williams should have notified the sheriff of the change, said the court, but he did not. The court concluded that Williams failed to establish the impossibility defense. Williams argued at trial that it was impossible for him to give timely notice because parole officer Langer never approved any homes. To establish that defense, said the court, Williams had to notify the sheriff that the Edgar Avenue address was no longer accurate on the first business day that followed March 17. But, the court found, Williams did not do so on that day–or ever. Furthermore, the trial court concluded that whether or not a residence is "approved" is irrelevant because the statue does not make an offender's notification duty contingent on approval.

{¶ 5} The trial court found Williams guilty, sentenced him, and Williams appealed.

I.

{¶ 6} In the first assignment of error, Williams presents a claim of ineffective assistance of counsel. To establish this claim, a defendant must show that counsel's

performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674. To show prejudice, the defendant must show that there is a reasonable probability that, but for counsel's deficient performance, the outcome would have been different. See Id. at 694.

{¶ 7} Williams contends that counsel failed to present evidence that was critical to establishing the impossibility defense. If the evidence had been presented and believed, Williams says, a reasonable probability exists that the court would have found him not guilty. Williams identifies three pieces of critical evidence that he asserts counsel failed to present. First counsel did not ask Langer about certain facts set forth in the appellate brief he filed in his first appeal. These facts all suggest that parole officer Langer did not do everything she could to find Williams a place to live after his release from prison, which Langer conceded at trial. Williams claims, in his present brief, that as a result of Langer's lack of help, he was homeless when he got out of prison. Second, counsel did not allow him to testify in his own defense. Williams asserts that he is the only person who can establish why it was impossible for him to register the Kirkham Street or Kipling Avenue addresses. Finally, counsel did not elicit testimony about whether or not Williams knew that he could register more than one residence address.

{¶ 8} Had any of this evidence been presented the trial court's verdict would have been the same. To establish the affirmative defense, Williams needed to notify the sheriff of the change in his residence address on the first business day after he learned of the change. As the trial court found, Williams never notified the sheriff of

this. Therefore Williams simply could not establish the impossibility defense. None of the above-cited evidence would have helped.

{¶ 9}   The first assignment of error is overruled.

**II.**

{¶ 10} In the third and second assignments of error, taking them in logical order, Williams contends that his conviction is not supported by legally sufficient evidence and is against the manifest weight of the evidence. Evidentiary sufficiency and evidentiary weight are different legal concepts that ask the evidence different questions. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52. The former regards "'whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.'" Id. at 386, quoting Black's Law Dictionary (6 Ed.1990) 1433. The question is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, at paragraph two of the syllabus. Even if the evidence is legally sufficient, the weight of the evidence–the "greater amount of credible evidence," *Thompkins*, at 387–may support a defense verdict. The question is whether the jury clearly lost its way in weighing the evidence presented at trial and the reasonable inferences drawn from the evidence, in considering the witnesses' credibility, and in resolving any conflicting evidence. See id. at 387, citing *State v. Martin* (1983), 20 Ohio App.3d 172, 175. A reviewing court may reverse on the basis of evidentiary weight only if the jury's verdict "created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Id., quoting

*Martin*, at 175. The bar is high: the court may reverse and grant a new trial "only in the exceptional case in which the evidence weighs heavily against the conviction." Id., quoting *Martin*, at 175.

{¶ 11} In his sufficiency argument, Williams contends that, for the same reasons he set forth in the first assignment of error, a preponderance of the evidence proves that it was impossible for him to notify the sheriff of his intent to move to the Kirkham Street home. This contention, though, is irrelevant to whether the state presented enough evidence to support Williams's conviction for failure to notify. An affirmative defense is a "justification[] for admitted conduct." *State v. Poole* (1973), 33 Ohio St. 2d 18, 19. "[It] represent[s] not a mere denial or contradiction of evidence which the prosecution has offered as proof of an essential element of the crime charged, but, rather, [it] represent[s] a substantive or independent matter which the defendant claims exempts him from liability even if it is conceded that the facts claimed by the prosecution are true." Id. So only if the evidence is legally sufficient to support a conviction is an affirmative defense even necessary. Williams does not contend that the evidence fails to support an essential element of the failure-to-notify offense.

{¶ 12} The third assignment of error is overruled.

{¶ 13} Williams argues that the weight of the evidence shows that he did not commit this offense. Williams asserts that he did not know if he could move. Therefore, he contends, it was impossible for him to notify the sheriff 20 days before he moved. Williams alternatively contends that his lack of knowledge tolled the 20-day pre-change-of-residence-address period. The evidence shows that Williams

did change his residence address, and there is no evidence that Williams ever voluntarily notified the sheriff of the change. Two conclusions follow: Williams cannot establish the impossibility defense, and the evidence does not weigh heavily against his conviction.

{¶ 14} The second assignment of error is overruled.

### III.

{¶ 15} While the trial court properly found Williams guilty, this Court's holding in *State v. Milby*, Montgomery App. No. 23798, 2010-Ohio-6344, suggests that, rather than sentencing him under current law, the court should have sentenced Williams under Megan's Law, the law that was in effect in 2006, when he committed the underlying offense. Although the issue was not raised in the trial court or in this appeal, we asked the parties to brief the issue. In this writer's opinion, *Milby* is incorrect. See *State v. Howard*, Montgomery App. No. 24680, 2011-Ohio-5693 (Hall, J., concurring in part and dissenting in part). Nevertheless, stare decisis requires we follow *Milby* and conclude that Williams should have been sentenced under the former law.

{¶ 16} Before 2008, Ohio's sexual offender registration and notification law (SORN) was based on the federal Megan's Law. After Congress replaced Megan's Law, Senate Bill 10 was enacted "to revise Ohio's Sex Offender Registration and Notification Law and conform it to recently enacted requirements of federal law contained in the Adam Walsh Child Protection and Safety Act of 2006." Am.Sub.S.B. No. 10, Preamble. Known as Ohio's Adam Walsh Act (AWA), S.B. 10 went into effect on January 1, 2008, and made subject offenders' registration and notification duties

generally more onerous.

**{¶ 17}** Like Williams, the defendant in *Milby* had been classified under Megan's Law and was reclassified under the AWA. In 2009, the defendant was convicted for violating the AWA's change-in-residence-address notification duty. This Court's decision noted that in *State v. Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, decided in June 2010, the Ohio Supreme Court struck down as unconstitutional the AWA's reclassification provisions, saying that they "may not be applied to offenders previously adjudicated by judges under Megan's Law," and the Court reinstated "the classifications and community-notification and registration orders imposed previously by judges." Id. at ¶ 66. This Court noted that the AWA did not change the Megan's Law notification duty. But, the decision said, the AWA did increase the penalty for a violation. Based on *Bodyke*, this Court held that the AWA's higher penalty could not be imposed on the defendant. And the case was remanded so that the defendant could be resentenced under Megan's Law.

**{¶ 18}** Chapter 2950 of the Revised Code contains the SORN law. Section 2950.99 contains the penalties for violations. While S.B. 10 amended those sections in Chapter 2950 describing the registration and notification duties, it was separate legislation that amended section 2950.99. Senate Bill 97 "modified the penalties for violations of the Sexual Offender Registration and Notification Law." Am.Sub.S.B. No. 97, Preamble. Although it went into effect on the same day as S.B. 10, S.B. 97 cannot properly be considered part of that legislation. Furthermore, *Bodyke* never cited section 2950.99, saying nothing about penalties. Williams has always had the notification duty. Because his sentence is for a 2009 offense–well after S.B. 97's

amendments to the penalty provision went into effect–it appears that the current penalty provision should apply to Williams. Indeed, other districts would hold that it applies to him. See *State v. Dunwoody*, Muskingum App. No. CT11-0029, 2011-Ohio-6360; *State v. Freeman*, Hamilton App. No. C-100389, 2011-Ohio-4357. But in this district *Milby* is established law. See *State v. Johnson*, Montgomery App. No. 24029, 2011-Ohio-2069 (following *Milby*); *State v. Alexander*, Montgomery App. No. 24119, 2011-Ohio-4015 (same); and *State v. Howard*, Montgomery App. No. 24680, 2011-Ohio-5693 (same). Therefore, stare decisis requires us to reverse.

{¶ 19} Williams's judgment of conviction is affirmed in part and reversed in part. His sentence is vacated, and this cause is remanded so that Williams can be resentenced under former law.

Judgment affirmed in part

and reversed in part,

and cause remanded.

. . . . . . . . . . . . .

GRADY, P.J., concurring:

I would overrule Defendant-Appellant's first assignment of error, claiming ineffective assistance of counsel on the authority of *State v. Cooperrider*, 4 Ohio St.3d 226, 448 N.E.2d 452 (1983) because Defendant-Appellant's contentions in support of his claim are based on facts not appearing of record. The proper procedure to present such claims is an R.C. 2953.21 petition for postconviction relief. *Id.*

I do not subscribe to Judge Hall's critique of our holding in *State v. Milby*, 2nd Dist. Montgomery No. 23798, 2010-Ohio-6344, and its application to the present case. Defendant Williams was previously classified under Megan's Law. His reclassification to conform to the Adam Walsh Act and its requirements was unconstitutional. *State v. Bodyke*, 126 Ohio St.3d 266, 933 N.E.2d 753, 2010-Ohio-2424. In consequence of that, Williams remains classified pursuant to Megan's Law, and the penalties for his failure to comply with the registration requirements Megan's law imposes are the penalties Megan's Law prescribed for those classified pursuant to it.

That is not to say that the General Assembly cannot impose more onerous penalties for crimes not yet committed. Instead, per *Bodyke*, Williams' Megan's Law adjudication, being a final order, governs the penalties available for Williams' violation of Megan's Law, and the penalties prescribed by the Adam Walsh Act provisions are available only for those properly classified pursuant to that legislation, and Williams was not.

. . . . . . . . . . . . . .

DONOVAN, J., concurs in judgment only.


Copies mailed to:

Mathias H. Heck, Jr.
Johnna M. Shia
William O. Cass, Jr.
Hon. Dennis J. Langer